# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

John W. Derr, Kimberly Ann Kastle,    :
GED a minor child, GRD a minor child,  :
SAD a minor child, Arielle Derr, AA a   :
minor child and other people           : No.:  4:17-cv-00976
similiarly situated                   :
                                 :
        v.                : Jury Trial Demanded
                                 :
Northumberland County Children     :
and Youth Services, et al          :

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6)

Moving Defendants' by and through their attorney, William J. Ferren and Associates files this Memorandum of Law in support of their Motion to Dismiss Plaintiffs' Complaint and in support thereof states as follows:

## STANDARD OF REVIEW

A motion under Rule 12(b)(6) tests the sufficiency of a Complaint against the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires that a Complaint contain a short and plain statement of the claim showing that the Plaintiff is entitled to relief "in order to give the Defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A Complaint must contain "sufficient factual matter, accepted as true, to "state

a claim to relief that is plausible on its face." Ashcroft v.Iqbal, 556 U.S.662, 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "probability requirement," it demands more than a mere possibility that the Defendant has acted unlawfully. Id. A formulaic recitation of the elements of a cause of action does not suffice to meet the Rule 8 obligation of a "short and plain statement" of the claim and its grounds. Twombly, 550 U.S. at 555. Legal conclusions and "naked assertions" are not entitled to the presumption of truth and must be disregarded for purposes of resolving a 12(b)(6) Motion. Iqbal, 129 S. Ct. at 1950. In Iqbal, the Supreme Court stated: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id. Furthermore "Plaintiffs' obligation to state the grounds of entitlement to relief 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Wilson v. Pallman, 2009 WL 2448577 (E.D. Pa. 2009, O'Neill J.); *quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555.

In analyzing a Motion to Dismiss, the court should conduct a two part analysis. First the court should separate the factual and legal elements of the claim – and the court should accept all facts as true and disregard any legal conclusions. Iqbal, 129 S. Ct. at 1949. Second, the court analyzes whether the

facts alleged in the Amended Complaint are sufficient to establish that the Plaintiff has stated a plausible claim for relief. <u>Id.</u> at 1950. A Complaint has to "show" such an entitlement with its facts. *See* <u>Phillips v. County of Allegheny,</u> 515 F.3d 224, 234-235 (3d Cir. 2008). Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the Complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" <u>Iqbal</u>, 129 S. Ct. at 1949.

## IV.       <u>ARGUMENT</u>

### A.    <u>The Child Protective Service Law</u>

The purpose of the Child Protective Services law is:

> To encourage more complete reporting of suspected child abuse; to the extent permitted…to involve law enforcement agencies in responding to child abuse; and to establish in each county protective services for the purpose of investigating the reports swiftly and competently, providing protection for children from further abuse and providing rehabilitative services for children and parents involved so as to ensure the child's well-being and to preserve, stabilize and protect the integrity of family life wherever appropriate….<u>23 Pa.C.S.A. §6301(b).</u>

> **§ General protective services responsibilities of county agency**.

> **(a)  Program objectives**.--Each county agency is responsible for administering a program of general

protective services to children and youth that is consistent with the agency's objectives to:

(1) Keep children in their own homes, whenever possible.

(2) Prevent abuse, neglect and exploitation.

(3) Overcome problems that result in dependency.

(4) Provide temporary, substitute placement in a foster family home or residential child-care facility for a child in need of care.

(5) Reunite children and their families whenever possible when children are in temporary, substitute placement.

(6) Provide a permanent, legally assured family for a child in temporary, substitute care   who cannot be returned to his own home.

(7) Provide services and care ordered by the court for children who have been adjudicated dependent.

**(b)  Efforts to prevent need for removal from home.--**In its effort to assist the child and the child's parents, pursuant to Federal regulations, the county agency will make   reasonable efforts prior to the placement of a child in foster care to prevent or eliminate the need for removal of the child from his home and to make it possible for the child to return to home.  23 Pa.C.S.A. §6373

**§ Principles and goals of general protective services.**

**(a)  Primary purpose.--**The primary purpose of general protective services is to protect the rights and welfare of children so that they have an opportunity for healthy growth and development.

**(b)  Assistance to parents.--**Implicit in the county agency's protection of children is assistance to parents in recognizing and remedying conditions harmful to their children and in fulfilling their parental duties more adequately. 23 Pa.C.S.A. §6374

### § County agency requirements for general protective services.

(a)  **Duties of county agency.--**The county agency shall make available a program of     general protective services within each agency. The county agency shall perform those functions assigned by this chapter and others that would further the purposes of this chapter. It shall have sufficient staff of sufficient qualifications to fulfill the purposes of this chapter and be organized in a way as to maximize the continuity of responsibility, care and service of individual workers toward individual children and families. The department by regulation shall set forth staff-to-family ratios for the receipt and assessment of reports of children in need of protective services and for the provision of   services   to neglected children and their families.

(c)  **Assessment for services.--**
(1)  Within 60 days of receipt of a report, an assessment shall be completed and a decision on whether to accept the family for service shall be made. The county agency shall provide or arrange for services necessary to protect the child during the assessment period.

(2)  Each county agency shall implement a State-approved risk assessment process in    performance of its duties.

(d)  **Receiving and assessing reports.--**The county agency shall be the sole civil agency  responsible for receiving and assessing all reports of children in need of protective services made pursuant to this chapter for the purpose of providing protective services to prevent abuse or neglect to children and to provide or arrange for and monitor the     provision of those services necessary to safeguard and ensure the child's well-being and development and to preserve and stabilize family life wherever appropriate. The department may waive the receipt and assessment requirement pursuant to section 6361 (relating to organization for child protective services). Nothing in this subsection limits 42 Pa.C.S.A.

§ 6304 (relating to powers and duties of probation officers).

(e)  **Family service plan.--**The county agency shall prepare a written family service plan in accordance with regulations adopted by the department.

(f)  **Types of services.--**Each county agency shall make available for the prevention and treatment of child abuse and neglect: multidisciplinary teams, instruction and education for parenthood and parenting skills, protective and preventive social counseling, emergency caretaker services, emergency shelter care, emergency medical services, part-day services, out-of-home placement services, therapeutic activities for the child and family directed at alleviating conditions that present a risk to the safety and well-being of a child and any other services required by department regulations.

(g)  **Monitoring, evaluating and assessing.--**The county agency shall frequently monitor the provision of services, evaluate the effectiveness of the services, conduct in-home visits and make a periodic assessment of the risk of harm to the child, which shall include maintaining an annually updated photograph of the child and verification of the identification of the child.

(i)  **Protective custody.--**Pursuant to section 6315 (relating to taking child into protective custody) and after receipt of a court order, the county agency shall take a child into protective custody to protect the child from abuse or further neglect. No county agency worker may take custody of a child without judicial authorization based on the merits of the situation.

(j)  **Court action.--**If the county agency determines that protective services are in the best interest of a child and if an offer of those services is refused or if any other reason exists to warrant court action, the county agency shall initiate the appropriate court proceedings.

(m)  **Weekly face-to-face contacts.--**For those children assessed under this section as being at high risk for abuse or neglect who are remaining in or returning to the home in which the abuse or neglect occurred, the

> county agency shall ensure that those children are seen at least once a week, either directly by a county agency worker or through purchase of service, until they are no longer assessed as being at high risk for abuse or neglect. <u>23 Pa.C.S.A. §6375</u>

## 1. Any and all claims brought by Arielle Derr, AA, GED, GRD and SAD should be dismissed under F.R.C.P. 11

Rule 11 of the Federal Rules of Civil Procedure requires that "[e]very pleading, written motion, and other paper must be signed… by a party personally if the party is unrepresented [by counsel]. Fed. R. Civ. P. 11(a).  A non-lawyer is not permitted to represent other parties, including family members, in federal litigation.  **See** <u>Osei-Afriyie v. Med. Coll. Of Pa.</u>, 937 F. 2d 876, 882-82 (3d Cir. 1991) (non-lawyer not permitted represent his minor children); <u>Williams v. United States</u>, 477 Fed. App'x. 9, 11 (3d Cir 2012) (per curiam) (non-lawyer holding power of attorney under state law not permitted represent her father pro se in federal litigation).  Thus, the Complaint filed by John W. Derr and Kimberly Ann Kastle on behalf of GED, GRD, SAD, Arielle Derr and AA fails to satisfy the signature requirement imposed by Rule 11.  Any and all causes of action brought by GED, GRD, SAD, Arielle Derr and AA must stricken from the Complaint.

WHEREFORE, it is respectfully requested that any and all claims sought to be brought by GED, GRD, SAD, Arielle Derr and AA be stricken from the Complaint.

## 2. Plaintiffs' failed to plead a Monell violation against Northumberland County Children and Youth Services, Northumberland County Commissioners and Northumberland County

Plaintiffs' failed to properly plead a Monell violation.  In order to set forth such a cause of action a Plaintiff must identify a constitutional violation and assert how that violation was a  result of a "custom," "practice," "policy," "procedure," "failure to train" or "failure to supervise." Such claims can only be brought pursuant to  Monell v. New York Department of Social Services, 463 U.S. 658; 98 S.Ct. 2019 (1978).   A municipality can be held liable only where one of its employees is primarily liable under §1983.   Williams v. Borough of West Chester,  891 F.2d 458, 467 (3d Cir. 1989); City of Los Angeles v. Heller, 475 U.S. 796 (1986).   "A municipality cannot be liable under §1983 under a theory of *respondeat superior*.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those edicts, or acts that may fairly be said to represent official policy, inflicts the injury, that the government as an entity is responsible under §1983."  Russoli v. Salisbury Township, 127 F.Supp. 2d.

821,860-861 (E.D. Pa., 2000) citing Monell at 694.  "A plaintiff must identify the challenged policy, attribute it to the municipality itself, and show a causal link between execution of the policy and injury suffered."  Id. *citing* Losch v. Borough of Parksburg, 736 F.2d 903, 910 (3d Cir. 1984).   Furthermore, recovery under § 1983 cannot be premised upon a theory of *respondeat superior*. Id. 436 U.S. at 691. In order to attribute liability to Northampton County, Plaintiffs must show: (1) an underlying constitutional violation; (2) the identity of the official or governmental body with final policymaking authority; and (3) proof that those individuals "have, through their decisions, 'caused the deprivation of rights at issue by policies which affirmatively command that it occur or by acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure of the local governmental entity.'"  Simmons v. City of Phila., 947 F.2d 1042, 1062 (3d Cir. 1991) (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989)).  Plaintiffs must also establish that the policy in question was the "moving force" behind the constitutional tort.  Monell, 436 U.S. at 691; Fagan v. City of Vineland, 22 F.3d 1283, 1292 (3d Cir. 1994).  Additionally, Plaintiffs must allege facts to establish a causal connection between the policies or practices of NCCYS and the purported unconstitutional acts. Rees v. Office of children and Youth Services et.al.; 473 Fed. Appx. 139, 143 ;2012 U.S. App. LEXIS 6447, (3d

Cir. 2012). Here, Plaintiffs do no more in their Complaint then allege a respondeat superior claim against Northumberland County, Northumberland County Children and Youth Services and the Commissioners. The Complaint fails to assert a plausible claim against these Defendants as a matter of law.

### 3. Brittney Duke, Jill Snyder, Jenniffer Williard, Cathy Gremberling, Lisa Schaffer should be dismissed from this matter for lack of personal involvement

Plaintiffs' Complaint does not include any allegations that Jenniffer Williard, Cathy Gremberling or Lisa Schaffer were personally involved in the alleged constitutional violations.   Plaintiffs' only assertion against Brittney Duke is that she brought outdated car seats to transport Plaintiffs' children. **See** Document #1, Complaint, Section II. D. 3.  Plaintiffs' failed to describe how these defendants violated their civil rights.  Since Plaintiffs' have failed to plead any cause of action against these defendants they must be dismissed from this matter.   Rode v. Dellarciprete, 845 F. 2d 1195 (3d. Cir. 1988).

The only basis upon which Plaintiffs assert a claim against Jill Snyder is that she was a "supervisor." **See** Complaint, page 36, paragraph 6.  In their Complaint, Plaintiffs' assert that "Miller and Milke both contacted their

supervisor.  This is a clear participation in the violations.  In fact, Mr. Derr's parents called Snyder the next day to see what they could do to get the children, and Snyder encouraged parents of derr (Sic.) and Kastle to file for custody despite knowing they would not be granted custody."  **See** Complaint, page 36, paragraph 6.  It is clear that Plaintiffs' are attempting to assert a claim under a theory of *respondeat superior* liability against these "supervisors." It is axiomatic that such a cause of action is not viable against a municipal entity or its officials/employees in their official capacity.

"In order to find the supervisor liable under §1983," the Plaintiff must "show some affirmative conduct" by the supervisor "which played a role in the violation. Such personal conduct may be shown by demonstrating that [the supervisor] participated in violating the Plaintiffs' rights, or that he directed others to violate them, or that he, as the person in charge, . . . had knowledge of and acquiesced in his subordinate's violations."  Baker v. Monroe Township, 50 F.3d 1186, 1190 (3d Cir. 1995).  A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 586 (3rd Cir.(Pa.) Jun 10, 2004) (NO. 03-3075) HN: 6 (F.3d). In addition, supervisory liability requires a causal connection between the supervisor's actions and the violation of Plaintiffs' rights. Id.; Shaw v. Stackhouse, 920 F.2d 1135, 1147 (3rd Cir. 1990); Sample v. Diecks, 885 F.2d 1099, 1118, (3rd Cir. 1989).  Moreover, it

is indisputable that Plaintiffs cannot pursue this claim against the Northumberland County or the "supervisors" under a theory of Respondeat Superior. Hill v. Wagner, 2010 WL 4273326, f.n. 2 (E.D. Pa., Kelly, 2010) *citing* Kimble v. Tennis, 2006 WL 1548950 (M.D. Pa., 2006); Rode v. Dellarciprete, 845 F.2d 1195 (3d. Cir. 1988). Presently, there are no facts of any actions of any of the individuals whom Plaintiffs (presumably) group in the Complaint collectively as "supervisors." There are blind references to actions that unknown and unnamed supervisors were contacted by Miller and Milke- however, these wholly fail to state a plausible claim against the "supervisors." As such, Plaintiffs have failed to state a claim against each of the following Defendants: Brittney Duke, Jill Snyder, Jenniffer Williard, Cathy Gremberling or Lisa Schaffer

### 4. Northumberland County Commissioners Kymberly L. Best, Samuel J. Schiccatano, Richard J. Shoch must be dismissed from this matter for lack of personal involvement

Plaintiffs' assert that the Northumberland County Commissioners are liable under a Monell theory. In support of this cause of action Plaintiffs' simply state that "[t]here is also a policy making component attached to Northumberland County Commissioners." **See** Complaint, page 37. Plaintiffs' then copied a section of the County website describing the role of

the Northumberland County Commissioners.   **See** Complaint, page 37. Plaintiffs' Complaint does not include any allegations that the Commissioners were personally involved in the alleged constitutional violations.   Plaintiffs' failed to describe how these defendants violated their civil rights.   Since Plaintiffs' have failed to plead any cause of action against these defendants they must be dismissed from this matter.   Rode v. Dellarciprete, 845 F. 2d 1195 (3d. Cir. 1988).

### 5. <u>Count I – 14th Amendment - Procedural Due Process</u>

The Plaintiffs' assert procedural due process claims arising from NCCYS' interactions with the family with regard to three children, GED, GRD and SAD. NCCYS filed Shelter Care and Dependency Petitions with regard to each child.  Both petitions were granted.

Plaintiffs' ostensible procedural due process claim fails as a matter of law because the procedures available to Plaintiffs under Pennsylvania law, and moving Defendants' conduct investigating the original report, constitute due process of law. Moreover, the 14th Amendment Claims asserted regarding NCCYSs' Petitions are barred by the Rooker –Feldman doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362, (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct.

1303, 75 L.Ed.2d 206 (1983) and by the <u>Younger</u> doctrine. <u>Younger v. Harris,</u> 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971).

### a.    Rooker-Feldman Bars Claim Related to J.M.

Plaintiffs' due process and 1st Amendment Right to Intimate Association Claims regarding are barred by the <u>Rooker-Feldman</u> doctrine because the allegations raised in the present Complaint constitute a collateral attack on the judgment entered by Northumberland County Court of Common Pleas Judges Jones and Woelfel in the shelter care and dependency proceedings.  The <u>Rooker-Feldman</u> doctrine precludes a United States District Court from reviewing final judgments of a state court because only the United States Supreme Court has jurisdiction to review those judgments pursuant to 28 U.S.C.1257." <u>Goodson v. Maggi</u>, 797 F. Supp. 2d 587, 597 (W.D. Pa. 2011); *citing* <u>Feldman,</u> 460 U.S. at 482, 103 S.Ct. 1303). "This doctrine applies even where the challenges to the state court judgment allege that the state court's action was unconstitutional, such as a deprivation of due process and equal protection rights." <u>Goodson</u>, 797 F. Supp. 2d at 597; *citing* <u>Feldman</u>, 460 U.S. at 485-86.

Under the Rooker-Feldman doctrine, "federal district courts lack subject matter jurisdiction to review final adjudications of a state's highest court or to evaluate constitutional claims that are inextricably intertwined with the state court's decision in a judicial proceeding." Guarino v. Larsen, 11 F.3d 1151, 1156 (3d Cir. 1991) (internal quotation omitted); *citing* Feldman, *460 U.S. 462;* Rooker*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923)*. The Third Circuit has identified when a federal action is inextricably intertwined with a state court judgment, in quoting Justice Marshall in Pennzoil v. Texaco, Inc., 481 U.S. 1, (1987), stating:

> . . . it is apparent. . . that the federal claim is inextricably intertwined with the state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment. Centifanti v. Nix, 865 F.2d 1422 (3d Cir. 1989.) quoting Pennzoil, 481 U.S. at 25 (Marshall, J., concurring).

In addressing the Rooker-Feldman the Third Circuit has stated:

> …if federal district courts are precluded, as they are, from reviewing the decisions of a state's highest court, even when those decisions appear to the district court to have plainly been in violation of the Constitution, then federal district courts are certainly also precluded from reviewing decisions of lower state courts, which are subject to correction and modification within the

state court system. Port Auth. Benevolent Ass'n v. Port Auth. of New York and New Jersey, 973 F.2d 169, 177 (3d Cir. 1991).

Here, it is clear that Plaintiffs' claims are inextricably intertwined with Judge Jones and Judge Woelfel's respective Orders regarding the placement of Plaintiffs' children.  All allegations in this action are a challenge to that state court judgment – in that a finding of a violation as Plaintiffs' seek here will call into question that final state court judgment. As such, this action is serving as a prohibited appeal of the Northumberland County Court of Common Pleas decisions related to Plaintiffs' children.

### b.   Younger Abstention Bars Claims

"[F]ederal courts must abstain from exercising jurisdiction over a claim where resolution of that claim would interfere with an ongoing state proceeding." Miller v. Mitchell, 598 F.3d 139, 145 (3d Cir. 2010). "A federal court must abstain when the following requirements are met: (1) the state proceedings are judicial in nature, (2) the proceedings implicate important state interests, and (3) the federal plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." Dicesare v. Office of Children,  Youth & Families, 2012 U.S. Dist. LEXIS 96723 (W.D.Pa. 2012) citing  Middlesex County Ethnics Comm. V. Garden State Bar Assoc., 457 U.S. 423, 432, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982); FOCUS v. Allegheny Cnty. Ct. Com. Pl., 75 F.3d 834, 843 (3d Cir. 1996).  "The purpose of the

Younger abstention doctrine is for a federal district court to abstain from exercising jurisdiction over a claim when resolution of such claim would "offend principles of comity by interfering with ongoing state proceedings." Dicesare, at \*14-15; *citing* Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir. 2005). Here, the three Younger requirements are present. Namely, (1) the state court proceedings are judicial in nature; (2) the proceedings implicate important state interests – the need for NCCYS to comply with its statutorily mandated requirement of protecting children; (3) Plaintiffs have the opportunity to raise the Constitutional issues they raise presently- In fact, Mr. Derr admits that he filed a motion to suppress certain evidence and a motion to have the affidavit of probable cause suppressed due to "misrepresentations." **See** Document #1, Complaint paragraph II. D. (4.) (Sic.). *See* McDaniels v. N.J. Div. of Youth and Family Servs., 144 F. App'x 213, 215 (3d Cir. 2005). As the Younger factors are present, the Court should abstain from exercising jurisdiction over this matter.

### c.   **Procedural Due Process**

To establish a procedural due process claim under § 1983, Plaintiffs must prove: (1) a deprivation of an individual interest  encompassed by the Fourteenth Amendment's protection of life, liberty, or property, and (2) that the procedures available did not provide due process of law. *See* Hill v.

Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006).  To sustain a §
1983 claim based upon a violation of procedural due process Plaintiffs "must,
at a minimum, prove recklessness or 'gross negligence' and in some instance
may be required to show a 'deliberate decision to deprive' the plaintiff of due
process." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1277
(3d Cir. 1994).

Presently, Plaintiffs have not pled any assertions that even if true would
establish that the procedures available to them did not provide due process of
law.  As outlined above the CPSL mandates that child protective services,
such as NCCYS, ensure the safety of the children during investigations into
allegations of abuse. "Within 60 days of a report an assessment shall be
completed and a decision on whether to accept the family for service shall be
made. The County agency shall provide and arrange for services necessary to
protect the child during the assessment period." 23 Pa.C.S.A. § 6375(c) .
Furthermore, "[p]ursuant to section 6315 (relating to taking child into
protective custody) and after receipt of a court order, the county agency shall
take a child into protective custody to protect the child from abuse or further
neglect. No county agency worker may take custody of a child without judicial
authorization based on the merits of the situation." 23 Pa.C.S.A. §6375(i).

It is well-established that parents have a constitutionally protected interest in the custody, care and management of their children.  *See* <u>Lehr v. Robertson</u>, 463 U.S. 248 (1983).  However, this right is not absolute.  *See* <u>Lehr</u>, 463 U.S. at 256.  <u>Croft v. Westmoreland County Children & Youth Servs.</u>, 103 F.3d 1123, 1125 (3d Cir. 1997).  In <u>Croft</u>, the Third Circuit clarified parents' constitutional rights during child abuse investigations.  <u>Id.</u> at 1127.  Specifically, the Third Circuit balanced the fundamental interest in familial integrity with the state's interest in protecting children from abuse.  <u>Id.</u> at 1125-1126.  While a child abuse investigation does not constitute a constitutional deprivation, a constitutional deprivation can occur where there is no "reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse."  <u>Id.</u> Here, the Plaintiffs' Complaint demonstrates a reasonable and articulable ground upon which NCCYS proceeded. Namely that there was a report of abuse lodged with the agency, by Plaintiff Derr's parents.

Finally, the CPSL provides that "[I]f a County agency determines that protective services are in the best interest of a child and if an offer of those services is refused or if any other reason exists to warrant court action, the County **shall** initiate the appropriate court proceedings." <u>23 Pa.C.S.A. §6375(j)</u>. This is precisely what happened here. At which time, the Plaintiff's

received all of the process to which they are due, and which is currently ongoing.

### 6. <u>14th Amendment - Substantive Due Process</u>

Plaintiffs' substantive due process claim fails because there was reasonable and articulable evidence giving rise to a reasonable suspicion of abuse that prompted the investigation. The Third Circuit Court has stated that the standard to apply for substantive due process claims arising out of a custom, practice or policy is a "shock the conscience" standard. <u>Studli v. Children & Youth and Families Central Regional Office</u>, 346 Fed. Appx. 804, 812, (3d Cir. 2009).  Thus, "to support a substantive due process claim [whether it be a policy/protocol or an act by an official], the government conduct must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." <u>Roberts v. Mentzer</u>, 382 Fed. Appx. 158 (3d Cir. May 27, 2010) (citing, <u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 425 (3d Cir. 2006)). As noted above, a parent's right to custody care and management of their children is not absolute. *See* <u>Lehr</u>, 463 U.S. at 256; <u>Croft v</u> 103 F.3d at 1125. A constitutional deprivation will occur only where there are no "reasonable and articulable" evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse. <u>Id.</u> Thus, the central question was whether there is information available to the

investigating agency sufficient to create an objectively reasonable suspicion of abuse. Id. Thus, a social worker's decision to separate the family constitutes a substantive due process violation only when it "reach[es] a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" Miller v. City of Phila., 174 F.3d 368, 375-76 (3d Cir. 1999). The temporary removal of children does not establish that a child protection agency consciously disregarded a ""great risk" that "there was no good cause for the removal of the children."" Wodarski v. Erie Office of Children and Youth Services et.al. , 2012 U.S. Dist. LEXIS 22805 (W.D.Pa. 2012) *citing* Ziccardi v. City of Philadelphia, 288 F.3d 57, 66 (3rd Cir. 2002); Livingston v. Allegheny County, 400 Fed. Appx. 659, 664 (3rd Cir. 2010). (finding no substantive due process violation where "the information available at the time ... created an objectively reasonable suspicion of abuse[]" and "[n]o evidence suggest[ed] that [defendants] 'consciously disregarded a great risk that there had been no abuse.'"). As demonstrated above, the Complaint itself asserts facts which establish reasonable and articulable grounds for the investigation of abuse. As such, Plaintiffs' substantive due process claim is not plausible.

### 7.    4th Amendment

Plaintiffs assert a 4th Amendment claim alleging that Miller illegally entered the residence. To state an illegal claim against Defendants, Plaintiff

must allege that the actions of Defendants constituted a "search and seizure" under the Fourth Amendment and that the search and seizure was unreasonable. <u>Manlovich v. Park, 2010 U.S. Dist. Lexis 114738 (W.D. Pa. 2010</u>. "The primary task of any Fourth Amendment analysis is assessing the reasonableness of the government search. If the *search* is reasonable, there is no constitutional problem, for the Fourth Amendment only protects individuals from unreasonable searches and seizures." <u>Id.</u> *citing* <u>United States v. Sczubelek,</u> 402 F.3d 175, 182 (3d. Cir. 2005).

In support of this claim, Plaintiffs assert that Miller "unlocked and opened a door over the objection of Kastle and without benefit of a warrant." **<u>See</u>** Complaint, 4th Amendment Count, paragraph 2, page 2, lines 18 through 20.  The Complaint does not state a plausible claim for a deprivation of the 4th Amendment. Rather, Plaintiffs merely recite the bare elements of a 4th amendment assertion – that is that Ms. Miller "entered" her room without her consent.  Importantly, Plaintiffs acknowledge that Miller responded to the property on April 17, 2017 at the request of Derr's parents (**<u>See</u>** Complaint, II, D, 1.) and that NCCYS caseworkers were granted access to the home by Derr's parents, the owners of the home ( **<u>See</u>** Complaint, II, D, first page and 4th Amendment Count, paragraph 3.).  As a matter of law, the assertions outlined by the Plaintiffs' in their Complaint cannot be deemed a willful

detention or taking on the part of the moving Defendants.  Plaintiffs' failed to properly plead a Fourth Amendment cause of action.

Moreover, exigent circumstances existed such that Miller was justified in entering Kastle's room  It is well settled that the Fourth Amendment only protects against "unreasonable" searches and seizures.  U.S. Const. Amend. IV; Ohio v. Robinette, 519 U.S. 33, 117 S. Ct. 417, 421 (1996) (reiterating that the Supreme Court has "long held that 'the touchstone of the Fourth Amendment is reasonableness'").  Likewise, the Fourth Amendment's right to be free of warrantless entries into one's residence is not absolute; such entries may be justified where exigent circumstances exist.  Minn. v. Olson, 495 U.S. 91, 110 S. Ct. 1684 (1990); Parkhurst v. Trapp, 77 F.3d 707, 711 (3d Cir. 1996).

In explicating the type of exigent circumstances that would justify a warrantless entry into a person's home, the Court has held that "a warrantless intrusion may be justified by hot

pursuit of a fleeing felon…or the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling."  Sharrar v. Felsing, 128 F.3d 810, 820 (3d Cir. 1997) (citing Olson, 495 U.S. at 100, 110 S. Ct. at 1690); see also Hogan v. City of Easton, 2004 WL 1836992, *8 (E.D.Pa. 2004) (same); United States v. Santana, 427 U.S. 38, 42-43, 96 S. Ct. 2406, 2409-2410 (1976) (recognizing the "hot pursuit" doctrine for arrest in home); Warden

v. Hayden, 387 U.S. 294, 298-299, 87 S. Ct. 1642, 1645-1646 (1967) (same).

Exigent circumstances exist to justify warrantless entries and searches when state

actors reasonably believe that a person within the dwelling is in need of immediate

aid.  Mincey v. Ariz., 437 U.S. 385, 392, 98 S. Ct. 2408, 2413 (1978); *see also*

Good v. Dauphin County Soc.  Serv. for Children & Youth, 891 F.2d 1087, 1094

(3d Cir. 1989) (holding that state actors making a warrantless search "must have

reason to believe that life or limb is in immediate jeopardy and that the intrusion

is reasonably necessary to alleviate the threat").

Lastly, in judging whether exigent circumstances exist, courts must decide

only whether the officer's determination was "objectively reasonable at the time

in question based on the reasonably discoverable information available to the

officer at the time," not whether the officer's determination was reasonable in

hindsight.  Parkhurst 77 F.3d at 711.  Likewise, in reviewing an officer's

evaluation of the existence of exigent circumstances, courts look to "the totality

of the circumstances."  United States v. Sculco, 82 F. Supp. 2d 410, 417 (E.D.Pa.

2000).

In the instant case, it is clear that Derr and Kastle's children were in need

of immediate aid.  Plaintiffs' admit that Derr's parents called the Northumberland

County Children and Youth Services.  Clearly, Mr. Derr's parents were concerned

about the welfare of their grandchildren.  There is no other reason to call the

NCCYS.  Plaintiffs' admit that Mr. Derr's father "discussed the issues and stated '[s]he won't listen to us perhaps she will listen to you.'"  **See** Complaint, II, D (page 5).   While Plaintiffs' did not detail what "issues" they were referencing, it is abundantly clear from the Northumberland County juvenile proceedings what issues caused Derr's parents' to contact NCCYS.  The home conditions for the Plaintiffs' three minor children were deplorable.  The children were sitting in their own feces.  The children were covered in dirt.  Two of the children had severe diaper rash requiring emergency room treatment.  **See** Exhibit "A."  Judge Jones issued a verbal Order allowing for the removal of the children the very same day that Miller "searched" Kastle's room.  On April 20, 2017 Northumberland County Judge Jones heard the evidence regarding the "issues" and issued a Shelter Order for the children holding that it would be contrary to the children's welfare to be returned to Plaintiffs.  **See** Exhibit "B."  On June 15, 2017 Northumberland County Judge Woelfel held a dependency hearing regarding the "issues" and Ordered the children to remain in foster care for their own safety.  **See** Exhibit "G."  Exigent circumstances existed on April 17, 2017 for Miller to enter Kastle's room.  Plaintiffs' Fourth Amendment rights were not violated.  Plaintiffs' Fourth Amendment Cause of Action must be dismissed.

Plaintiffs also assert that the removal of the children from the residence was a seizure. "The Fourth Amendment prohibits unreasonable seizures; it is not a general prohibition of all conduct that may be deemed unreasonable, unjustified or outrageous." Medeiros v. O'Connell, 150 F.3d 164, 167 (2nd Cir. 1998) *citing* Carter v. Buscher, 973 F.2d 1328, 1332 (7th Cir.1992).  So the first step in any Fourth Amendment claim (or, as in this case, any section 1983 claim predicated on the Fourth Amendment) is to determine whether there has been a constitutionally cognizable seizure. *See* Michigan v. Summers, 452 U.S. 692, 696, 101 S.Ct. 2587, 2590-91, 69 L.Ed.2d 340 (1981).  "[A] [v]iolation of the Fourth Amendment requires an intentional acquisition of physical control.  A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful.   This is implicit in the word "seizure," which can hardly be applied to an unknowing act." Id. citing Brower v. County of Inyo, 489 U.S. 593, 596, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989).

As a matter of law Plaintiffs' failed to properly assert that the seizure of their children violated the Fourth Amendment.  Miller's actions were reasonable under the circumstances.  NCCYS received a call regarding Plaintiffs' children.  The children were living in deplorable conditions and two of the three children required emergency medical care.   Two

Northumberland County Court of Common Pleas Judges' issued Orders confirming that the children should be seized. As such, Plaintiffs' have failed to properly assert a Fourth Amendment cause of action.

### 8.    1st Amendment Claim - Right to Intimate Association

Plaintiffs' assert a 1st Amendment claim for a violation of Plaintiffs' right to intimate association. The Third Circuit has recognized that "family relationships are the paradigmatic form of protected intimate associations, as they 'by their nature involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences and beliefs but also distinctively personal aspects of one's life.'" Pi Lambda Phi Fraternity, Inc. v. University of Pittsburgh, 229 F.3d 435, 441-42 (*quoting* Roberts v. United States Jaycees, 468 U.S. 609, 619-20).

In Roberts, the United States Supreme Court noted that the United States Constitution imposes greater constraints on state power to regulate rights of intimate association than it does on state power to regulate a union or large organization's expressive association rights. Roberts, 468 U.S. at 620. While the right to intimate association is not absolutely protected from state regulation, state regulation of intimate association is subject to strict scrutiny.

*See* Louisiana Debating & Literary Ass'n v. City of New Orleans, 42 F.3d 1483, 1498 (5th Cir. 1995), cert. denied 515 U.S. 1145, 115 S. Ct. 2583, 132 L. Ed. 2d 832 (1995). The defendant must show that: (1) the state action serves a compelling state interest which (2) cannot be achieved through "means significantly less restrictive of one's associational freedom." *See* id. As previously noted, Defendants have a compelling state interest in protecting children. *See* Croft, 103 F.3d at 1125.

Here, once again the Complaint merely recites the bare elements of the claim. It is devoid of facts to support this claim. As already demonstrated, the Complaint alleges that NCCYS was investigating a report of abuse. It cannot be reasonably challenged that NCCYS is mandated under the CPSL to protect the children during the course of the investigation. *See* 23 Pa.C.S.A. §6375.

Similarly here, the statutory responsibilities with which child protective service agencies, such as NCCYS, give rise to a "charged" atmosphere and invite threats of litigation. Moreover, particularly in the case at bar, the prospect of fending off litigation is particularly chilling **when the underlying state litigation is ongoing.** The causation analysis is more demonstrative of Plaintiffs using this litigation as retaliation against NCCYS and its officials, for the performance of their statutorily mandated investigation.

9.    **1ˢᵗ Amendment Claims for Video Recording**

    A.    No First Amendment Violation

The Third Circuit has recently held that the public has a First Amendment right to video record the activities of police officers performing their official duties while in public areas.  <u>Fields v. City of Philadelphia</u>, 862 F. 3d. 353 (3ʳᵈ Cir. 2017).   However, the <u>Fields</u> decision has no relevance to the current litigation since Plaintiffs' speech was not chilled.  To state a First Amendment retaliation claim pursuant to 42 U.S.C. §1983, a plaintiff must allege the following three elements:  (1) constitutionally protected conduct; (2) that the defendant took adverse action sufficient to deter a person of ordinary firmness from exercising his rights; and (3) a causal connection between the two.  <u>Thomas v. Independence Twp.</u>, 463 F.3d 285, 296 (3d Cir. 2006).  Ms. Derr (presumed to be Arielle Derr) is the mother of child "AA." **<u>See</u>** Document #1, "First Amendment Rights to Familial Association Statement of Claim," paragraph 6, second sentence.   In their Complaint Plaintiffs' assert that Miller and Milke stated that because she began recording the workers that they were going to ask the police to remove her child and all other children in the home.  **<u>See</u>** Document #1, "First Amendment Rights to Familial Association Statement of Claim," paragraph 6.  In their Complaint, Plaintiffs' state that "[w]hile the children in this case became intimidated none

of the adults were having none (Sic.) of the threats." **See** Document #1, II. D.3.   Plaintiff Arielle Derr failed to properly plead a First Amendment violation since it is admitted that she was not deterred from recording.

### B.    Qualified Immunity

Miller and Milke are entitled to qualified immunity.  Government actors are entitled to qualified immunity unless they violated a constitutional right "so clearly established that 'every reasonable official would have understood that what he is doing violates that right.' " Zaloga v. Borough of Moosic, 841 F.3d 170, 175 (3d Cir. 2016) (*quoting* Reichle v. Howards, 566 U.S. 658, 659, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012)) (emphasis in original). "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." Id. (*quoting* Reichle, 566 U.S. at 664, 132 S.Ct. 2088) (emphasis in original). We do not need Supreme Court precedent or binding Third Circuit precedent to guide us if there is a "robust consensus of cases of persuasive authority in the Courts of Appeals." L.R. v. Sch. Dist. of Phila., 836 F.3d 235, 247–48 (3d Cir. 2016) (alteration and citations omitted). District court decisions, though not binding, also "play a role in the qualified

immunity analysis." <u>Doe v. Delie</u>, 257 F.3d 309, 321 n.10 (3d Cir. 2001). To determine whether the right is clearly established, the Third Circuit has looked at the state of the law when the alleged violation occurred.  In regards to this matter, April of 2017.  To conduct the clearly established inquiry, the court must "frame the right 'in light of the specific context of the case, not as a broad general proposition,' " L.R., 836 F.3d at 247–48 (citation omitted), as it needs to be "specific enough to put 'every reasonable official' on notice of it." <u>Zaloga</u>, 841 F.3d at 175 (citation omitted). At issue here is Plaintiff Arielle Derr's ability to record Milke and Miller carrying out their official duties as CYS employees in public.  There are no such cases which are directly on point which would make that right "clearly established."  Moreover, the <u>Fields</u> decision, (which addressed only the right to record police officers, not CYS workers) was issued in July of 2017, three months after the alleged First Amendment violation against Arielle Derr.  Up until July of 2017 the Third Circuit had never upheld a first Amendment right to video record police officers while carrying out their official duties.  See <u>Gilles v. Davis</u>, 427 F.3d 197, 212 n.14 (3d Cir. 2005) ("[V]ideotaping or photographing the police in the performance of their duties on public property may be a protected activity.").

The state of the law on April 17, 2017 did not give fair warning so that every reasonable CYS worker knew that, absent some sort of expressive intent, recording CYS activity was constitutionally protected. Accordingly, Milke and Miller are entitled to qualified immunity.

**10.    Plaintiffs' 1st and 14th Amendment Claims Must Be Dismissed Because All of the individually named Defendants Are Entitled to Absolute Immunity.**

NCCYS caseworkers are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings. Ernst v. Child and Youth Services, 108 F.3d 486 (3d. Cir. 1997); B.S. v. Somerset County, 704 F. 3d 250 (3d. Cir. 2013); Millspaugh v. County Dep't of Pub. Welfare of Wabash County, 937 F.2d 1172, 1176 (7th Cir.1991); Vosburg v. Department of Soc. Servs., 884 F.2d 133, 135 (4th Cir.1989); Salyer v. Patrick, 874 F.2d 374, 378 (6th Cir. 1989).

The application of absolute immunity in this context originates from the doctrine of absolute prosecutorial immunity as announced by the Supreme Court in Imbler v. Pachtman , 424 U.S. 409, 418, 47 L. Ed. 2d 128, 96 S. Ct. 984 (1976). In Imbler, the Court considered various public policy considerations in granting absolute immunity to prosecutors including: 1) the possibility of compromising the prosecutor's independent judgment if faced

with personal liability; 2) the likelihood that the prosecutor would be diverted from his duties if faced with defending against lawsuits arising from their decision making; 3) the particular difficulty in defending against civil rights claims for prosecutors given the nature of their decision-making functions in the judicial process and 4) the impact on the judicial process in the likely event that a prosecutors decision making process is altered by the threat of being personally liable for his decision-making; 5) failure to afford absolute immunity may weaken the fairness of the judicial process; and 6) the judicial and professional responsibility review are sufficient to deter and punish the errant prosecutor  Id. 424 U.S. at 424-25. In Ernst, the Third Circuit analyzed the philosophy of extending absolute immunity to child youth services employees and ruled that the same principles applicable in providing absolute immunity to prosecutors applies equally to such public officials. Ernst, 108 F.3d at 497.

> Applying the principles set forth in Butz, Imbler, and their progeny to the instant case,   we    hold    that    the    CYS defendants are entitled to absolute immunity for their actions on      behalf  of  the  state  in  preparing  for,  initiating,  and prosecuting dependency proceedings. Their immunity is broad enough  to  include  the  formulation  and  presentation  of recommendations to the court in the course of such proceedings. We reach this      conclusion  because  (1)  the  functions performed by the CYS defendants in dependency proceedings are closely analogous to the functions performed by prosecutors

in criminal proceedings; (2) the public policy considerations that countenance immunity for prosecutors are applicable to child welfare workers performing these functions; and (3) dependency proceedings incorporate important safeguards that protect citizens from unconstitutional actions by child welfare workers.  Id. at 495.

Significantly, the Ernst court also recognized the inherent risks of the exposure of "CYS Defendants" to retaliatory lawsuits for actions taken in their roles providing services. " In the absence of absolute immunity, we would expect suits in retaliation for the initiation of dependency proceedings to occur with even greater frequency than suits against prosecutors. Parents involved in seemingly unjustified dependency proceedings are likely to be even more resentful of state interference in the usually sacrosanct parent-child relationship than are defendants of criminal prosecution." Id.  496-467 *citing* Vosburg v. Department of Soc. Servs., 884 F.2d 133, 137 (4th Cir. 1989).  *"*In turn, the likely frequency of such suits would result in a significant diversion of the energies of child welfare workers away from their official duties to the defense of § 1983 litigation" . . . and . . . . "defending against § 1983 actions would likely be as difficult for child welfare workers as it would be for prosecutors because child welfare workers, like prosecutors, must make quick decisions on the basis of limited information. Defending these decisions, often years after they are made, could impose unique and intolerable burdens on

[child welfare workers] responsible annually for hundreds of [dependency and child abuse cases]." Imbler, 424 U.S. at 425-26,

Presently, all of the allegations against the individual case workers (Amanda Miller, Marie Milkie Brittney Duke, Jill Snyder, Jennifer Williard, Cathy Gremberling, and Lisa Schaffer) for NCCYS (except for the 4th Amendment Claims) arise from their involvement in the Shelter Care Application and Petition for Dependency. As such, all of the NCCYS case workers are entitled to absolute immunity for any such acts, namely those acts which allegedly give rise to Plaintiff's claims under the 1st and 14th Amendments.

## 11.   <u>Immunity Under 23 Pa.C.S.A. §6318.</u>

The CPSL provides immunity from liability to agency employees engaged in providing services under the act.

> **§      6318.  Immunity from liability.**
> **(a)  General rule.--**A person, hospital, institution, school, facility, agency or agency employee that participates in good faith in the making of a report, whether required or        not, cooperating  with  an  investigation,  including  providing        information to a child fatality or near fatality review team, testifying in a proceeding arising out of an instance of suspected child abuse, the taking of photographs or the removal or keeping of a child pursuant to section 6315 (relating to taking child into protective custody), and any official or employee of a county agency  who  refers  a  report  of  suspected  abuse  to  law enforcement authorities **or provides services under this chapter**, shall have immunity from civil and criminal liability

that might otherwise result by reason of those actions.   23 Pa.C.S.A. § 6318 (*emphasis added*)

Presently, the allegations set forth in Plaintiff's Complaint demonstrate that Defendants were providing services under the CPSL. Once again, Plaintiffs' acknowledge that Mr. Derr's parents reported abuse to NCCYS. Under the CPSL NCCYS is statutorily mandated to investigate those allegations. All of the purported wrongful acts, even if credited with truthfulness for purpose of this motion, derived from the investigation into the report of abuse and were therefore associated with providing services under the CPSL.

## V.    **CONCLUSION**

For the reasons set forth above, the moving Defendants move for dismissal of Plaintiffs' Complaint in its entirety because it fails to assert a plausible claim for relief as a matter of law.

Respectfully submitted,

WILLIAM J. FERREN & ASSOCIATES

By:_____ */s/ Christine E. Munion*_____
          Christine E. Munion, Esquire
          Attorney for Northumberland County
          Children and Youth Services and
          Amanda Miller
          10 Sentry Parkway, Suite 301
          Blue Bell, PA  19422
          cmunion@travelers.com