**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN DERR, *et al.*, | : |
| Plaintiffs | : CIVIL ACTION NO. 4:17-0976 |
| v. | : (MANNION, J.) |
| NORTHUMBERLAND COUNTY CHILDREN AND YOUTH SERVICES, *et al.*, | : |
| Defendants | : |

## MEMORANDUM

Pending before the court is the report of Judge William I. Arbuckle, (Doc. 28), which recommends that the plaintiffs' pro se civil rights complaint under 42 U.S.C. §1983 challenging the Northumberland County Children and Youth Services' ("CYS") decision that removed children from their parents, (Doc. 1), be dismissed for failure to state cognizable federal claims. Also pending is the defendants' motion to dismiss the plaintiffs' complaint under Fed.R.Civ.P. 12(b)(6). (Doc. 13). Judge Arbuckle recommends that defendants' motion to dismiss be granted. Specifically, Judge Arbuckle finds that the plaintiffs' complaint should be dismissed with prejudice, for lack of jurisdiction, with respect to their Fourth, Fifth, and Fourteenth Amendment claims since they are barred by the *Rooker-Feldman* doctrine[1], and since the

---

[1]The *Rooker-Feldman* doctrine "is a judicially-created doctrine that bars lower federal courts from reviewing certain state court actions." Goodson v. Maggi, 797 F.Supp.2d 587, 597 (W.D.Pa.2011). The doctrine arose in the wake of two Supreme Court Cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462

*Younger* Abstention doctrine[2] bars these claims. (Doc. 28). Further, Judge Arbuckle finds that the plaintiffs have failed to state an actionable First Amendment retaliation claim, and that they did not state a proper claim against the municipal defendants under *Monell*.[3] Judge Arbuckle recommends that the plaintiffs' First Amendment retaliation claim and claim under *Monell* be dismissed without prejudice.

Neither the plaintiffs nor the defendants have filed any objections to Judge Arbuckle's report. The time within which to file objections has expired.

Where no objection is made to a report and recommendation, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." [Fed.R.Civ.P. 72(b)](), advisory committee notes; *see also* [Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp.2d 465, 469 (2010)]() (citing [Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987)]() (explaining judges should give some review to every Report and Recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept or

---

(1983).

[2] *Younger* abstention "is premised on the notion of comity, a principle of deference and 'proper respect' for state governmental functions in our federal system." [Evans v. Court of Common Pleas, Delaware County, Pa., 959 F.2d 1227, 1234 (3d Cir. 1992)]().

[3] Since plaintiffs name municipalities as defendants and allege that these defendants violated their constitutional rights, the standards annunciated in [Monell v. Department of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018 (1978)](), apply to these claims.

modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

The court has reviewed the reasons presented by Judge Arbuckle for recommending that the defendants' motion to dismiss be granted and, that the plaintiffs' claims in their complaint be dismissed. The court concurs with Judge Arbuckle's findings that all of the plaintiffs' claims under Fourth, Fifth, and Fourteenth Amendment should be dismissed with prejudice. Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See*, *e.g.*, Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004). It is clearly futile to allow the plaintiffs leave to amend any of their Fourth, Fifth, and Fourteenth Amendment claims since the court lacks jurisdiction over them. Because the court agrees with the sound reasoning that led Judge Arbuckle to the conclusions in his report with respect to the stated claims, and finds no clear error on the face of the record, the court will adopt the report and dismiss them with prejudice.

Next, the court considers Judge Arbuckle's recommendation that the plaintiffs' First Amendment retaliation claim be dismissed without prejudice. (Doc. 28, at 25-27).

In Noonan v. Kane, 698 Fed.Appx. 49, 52-53 (3d Cir. 2017), the Third Circuit discussed the elements of a First Amendment retaliation claim and stated:

> "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006) (citation omitted). It "is a fact intensive inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and retaliator, and the nature of the retaliatory acts." Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003) (quotation and emphases omitted). The "key question" is the second element—whether the action would sufficiently deter the exercise of constitutional rights. McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006). An official's retaliatory action "need not be great in order to be actionable," but it must be more than de minimus. Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000) (quotation omitted). "On the other hand, ... where the [official's] alleged retaliatory acts were criticism, false accusations, or verbal reprimands," a First Amendment retaliation claim typically does not exist. Brennan, 350 F.3d at 419 (quotation omitted).

With respect to the plaintiffs' retaliation claim, the plaintiffs fail to allege any relationship between them and the police officers who allegedly threatened retaliation for First Amendment activity. Nor do the plaintiffs allege that they personally suffered any adverse actions caused by the officers, i.e., there is simply no alleged causal link between any protected conduct by the plaintiffs and the alleged retaliatory action by the police officers. Further, as defendants point out, (Doc. 14 at 29-30), the plaintiffs admit that none of the adults were deterred from recording the caseworkers despite the alleged

4

threats from the officers.

Based on the allegations detailed in Judge Arbuckle's report and the above discussion, the court finds futility in allowing the plaintiffs leave to amend their First Amendment retaliation claim. As such, this claim will be dismissed with prejudice.

Finally, Judge Arbuckle finds that the plaintiffs have failed to state a cognizable claim under *Monell* against any of their municipal defendants which he identifies as NCCYS, NCC, and Northumberland County. However, he recommends that the plaintiffs' claim under *Monell* be dismissed without prejudice. (Doc. 28 at 28-30). Judge Arbuckle states that the "plaintiffs allege that NCCYS caseworkers violated multiple constitutional rights", but that they fail to allege that "a rule created by NCCYS, NCC, or Northumberland County caused the alleged violations." He further finds that "Plaintiffs fail to allege any facts that would support a finding of 'deliberate indifference' to the likelihood of a constitutional violation."

The court agrees with Judge Arbuckle that the plaintiffs have not stated an actionable claim under *Monell* against NCCYS, NCC, and Northumberland County and that this claim should be dismissed. The court now considers Judge Arbuckle's recommendation that the plaintiffs' claim under *Monell* should be dismissed without prejudice.

"Pennsylvania county offices of children and youth services are treated as municipalities for purposes of *Monell*." Hatfield v. Berube, 714 Fed.Appx.

5

99, 102 n. 1 (3d Cir. 2017) (citing Mulholland v. Government County of Berks, Pa.,706 F.3d 227, 237 (3d Cir. 2013)). Thus, the principles annunciated by the U.S. Supreme Court in *Monell* apply to the plaintiffs' claims against NCCYS, NCC, and Northumberland County under §1983. *See* Mullholland, 706 F.3d at 237 ("When a suit against a municipality is based on §1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom.") (citations omitted); Malles v. Lehigh County, 639 F.Supp.2d 566 (E.D.Pa. 2009). Under the Supreme Court precedent of Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 694 (1978), a municipality can be held liable under §1983 only if the plaintiff shows that the violation of his federally protected rights resulted from the enforcement of a "policy" or "custom" of the local government.

Additionally, a municipality such as Northumberland County is not liable under §1983 merely for employing someone (like the NCCYS caseworkers) who violates a person's civil rights; rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation. *See* Mann v. Palmerton Area School Dist., 33 F.Supp.3d 530, 540-41 (M.D.Pa. 2014).

In Mulholland,706 F.3d at 238-39, the Third Circuit determined that the district court correctly found that "[t]here is no evidence that BCCYS has a policy or custom of conducting inadequate investigations into allegations of

child abuse", and that "even if BCCYS's investigation was inadequate, it cannot be said to have been influenced by some 'policy or custom of BCCYS.'" Thus, the Third Circuit concluded that "[w]ithout more, Berks County, the municipality of which BCCYS is simply an agency, cannot be held liable under §1983 for a single caseworker's alleged deviation from the requirements of [a state law requiring reporting of alleged child abuse]."[4]

In the instant case, the court finds that the plaintiffs' claim under *Monell* should be dismissed with prejudice since it is completely devoid of any facts which would plausibly state such a claim. Based on *Mulholland,* the court finds that the plaintiffs have no claim against Northumberland County under *Monell* since their allegations are based only on the actions of the NCCYS caseworkers and the County cannot be held liable based on respondeat superior. *See Ciprich*, 2017 WL 3782786, *9 ('[U]nder §1983, local governments are responsible only for 'their own illegal acts,' and 'are not

---

[4] To the extent that plaintiffs name as defendants unidentified NCCYS caseworkers, the court notes that "[t]hey are absolutely immune from civil liability for their role in state court litigation on behalf of children who may be at risk", and that "[NC]CYS defendants are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings." Ciprich v. Luzerne County, 2017 WL 3782786, *6 (M.D.Pa. March 24, 2017) (quoting Ernst v. Child & Youth Servs. of Chester Cty., 108 F.3d 486, 495 (3d Cir. 1997)), adopted by 2017 WL 3709075 (M.D.Pa. Aug. 28, 2017).

Additionally, insofar as the plaintiffs name both Northumberland County and NCCYS as defendants, it appears that NCCYS is not a separate legal entity from the County and that it is subject to dismissal. *See* Kane v. Chester County Dept. of Children, Youth and Families, 10 F.Supp.3d 671, 686 (E.D.Pa. March 31, 2014)

7

vicariously liable under §1983 for their employees' actions.'" (citing Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350, 1359 (2011)). *See also* Kane v. Chester County Dept. of Children, Youth and Families, 10 F.Supp.3d 671, 688 (E.D.Pa. March 31, 2014) (court held that "plaintiff's allegations [regarding Monell claim] do not satisfy the *Twombly* pleading standard because the factual averments regarding CYF's policy, custom, or practice are nothing more than 'bald assertions' which fail to state a claim upon which relief can be granted.") (citation omitted).

The district court in *Ciprich*, 2017 WL 3709075, *9, considered a case similar to the present case and stated that even though the plaintiff requested the court to allow her to conduct discovery regarding her *Monell* claim against Luzerne County CYS, "[t]his amounts to an argument that Plaintiff should be allowed to engage in discovery in order to find facts which may help her state a cause of action", and "[t]he Court cannot allow this impermissible 'fishing expedition.'" (citing Ranke v. Sanofi-Synthelabo Inc., 436 F.3d 197, 204 (3d Cir. 2006); Bergin v. Teamsters Local Union No. 77, 2011 WL 486230, *2 (E.D.Pa. 2011) ("'fishing expeditions' to seek out the facts needed to bring a legally sufficient complaint are barred by the pleading clarifications in *Iqbal* and *Twombly*."); Chemtech Intern., Inc. v. Chem. Injection Techs., Inc., 170 Fed.Appx. 805, 808 (3d Cir. 2006) (quoting DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) ("the price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to

8

warrant further proceedings.... Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.")). In the instant case, even though the plaintiffs have not requested leave to amend their *Monell* claim, the court finds that if the plaintiffs were granted leave to amend their *Monell* claim, it would amount to nothing more than an impermissible "fishing expedition."

Finally, since the plaintiffs have failed to state any cognizable constitutional claim against any of the individual defendants who were employed by the municipal defendants, the plaintiffs' claim for municipal liability under *Monell* against NCCYS, NCC, and Northumberland County fail. With respect to the municipal defendants, the "first inquiry in any case alleging municipal liability under §1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989). Since the plaintiffs have failed to establish any constitutional claim against the individual defendants, any constitutional claim against NCCYS, NCC, and Northumberland based on *Monell* also fails. *See* Bergdoll v. City of York, 515 Fed.Appx. 165, 171 (3d Cir. 2013) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571 (1986) ("[N]either *Monell* ... nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when ... the officer inflicted no constitutional harm.")).

Thus, the court will dismiss with prejudice the plaintiffs' *Monell* claim against NCCYS, NCC, and Northumberland County.

Accordingly, the court will adopt in part Judge Arbuckle's report. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: August 9, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2017 MEMORANDA\17-0976-01.wpd